UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RSUI INDEMNITY COMPANY, § | | |
| *Plaintiff*, § | | |
| § | | |
| vs. § | | CIVIL ACTION H-08-1807 |
| § | | |
| ENBRIDGE (U.S.) INC.; ENBRIDGE § | | |
| PIPELINES (EAST TEXAS) L.P; § | | |
| ENBRIDGE PIPELINES (TEXAS § | | |
| INTRASTATE) L.P.; AND TROY § | | |
| CONSTRUCTION, L.L.P. § | | |
| *Defendants*. § | | |

**MEMORANDUM AND ORDER**

RSUI filed this suit seeking a declaratory judgment that the "wrap-up exclusion" in its excess liability policy precludes coverage for personal injury claims asserted against the defendants in a pending state court lawsuit. The Enbridge defendants (collectively referred to as "Enbridge") have now moved to dismiss on ripeness grounds because another condition for coverage, *i.e.*, exhaustion of the primary insurer's policy limits, has not yet been triggered.(Dkt. 8).[1] In the alternative, they seek to stay this action until the underlying state case is resolved. The motion is denied in both respects.[2]

---

[1] The other defendant, Troy Construction, L.L.P., has parted company with its co-defendants on this issue, filing a separate brief in support of jurisdiction. (Dkt.23).

[2] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including final judgment (Dkt. 20).

**I.     Background**

The underlying lawsuit arose when Samuel Bruce, an employee of Troy Construction, was crushed by a falling 70-foot pine tree during a construction project on an Enbridge pipeline in East Texas. That case, styled *Bruce v. Enbridge, et al.*, Cause No. 48-252, is pending in the 356th Judicial District of Hardin County, Texas.

Troy obtained two liability insurance policies in connection with the project: a $1 million commercial general liability policy issued by Liberty Mutual Insurance Company (the "primary policy"),[3] as well as an umbrella commercial liability policy issued by RSUI (the "excess policy") covering certain losses in excess of the Liberty policy limits. Enbridge is (apparently) an additional insured under these policies. Enbridge likewise obtained its own liability insurance coverage for the project, a so-called "wrap up" policy issued by AEGIS, and this policy names Troy as an additional insured.

The nub of the declaratory judgment dispute is whether a "wrap up exclusion" in the RSUI excess policy applies to deny coverage for Troy as a named insured or Enbridge as an additional insured under that policy. Both RSUI and Troy agree that their dispute is ripe for adjudication in this court, and that the underlying lawsuit will not resolve this dispute.

Enbridge, on the other hand, contends that RSUI's action does not present an actual and justiciable controversy because the underlying lawsuit is still pending and there is no

---

[3]     Liberty Mutual is defending the underlying lawsuit pursuant to a reservation of rights.

2

judgment or settlement in excess of Liberty policy limits at this time. It seeks to dismiss or stay this litigation pending resolution of the underlying lawsuit.

**II.     Analysis**

A fundamental purpose of the Declaratory Judgment Act "is to settle 'actual controversies' before they ripen into violations of law or a breach of contractual duty." *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949). To this end, the federal Declaratory Judgment Act provides in part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201. A district court has discretion in deciding whether to entertain a declaratory judgment action. *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001); *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994). The court must determine (1) whether the declaratory action is justiciable; (2) whether the court has authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action. *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir. 2003); *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895-96 (5th Cir. 2000). For an action to be justiciable it "must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based on the possibility of a factual situation that may never develop." *AXA RE Prop. & Cas. Ins. Co. v. Day*, 162 Fed. Appx. 316, 319 (5th

Cir. 2006) (quoting *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967)).

Once the justiciability hurdle is cleared, the court's discretion to decide or dismiss is guided by several factors: whether the pending state court action is capable of resolving all issues between the parties; whether the declaratory complaint was filed in anticipation of another suit; whether the declaratory plaintiff engaged in forum shopping; whether there are possible inequities allowing the declaratory plaintiff to gain precedence in time or forum; whether the federal court is convenient for parties or witnesses; whether retaining the suit in federal court would serve the purposes of judicial economy; and whether the federal court is being called on to construe a state judicial decree involving the same parties. *Trejo*, 39 F.3d at 590-91; *Psarianos v. Standard Marine, Ltd.*, 12 F.3d 461, 463-64 (5th Cir. 1994). The touchstone for decision is whether the state action "provides an adequate vehicle for adjudicating the claims of the parties and whether the federal action serves some purpose beyond mere duplication of effort." *Magnolia Marine Transport v. LaPlace Towing Corp.*, 964 F.2d 1571, 1581 (5th Cir. 1992).

***Justiciability.*** It is well-established that a dispute regarding an insurer's duty to defend or indemnify its insured for losses in a state court tort action by a third party presents an actual controversy with the meaning of the federal Declaratory Judgment Act, even if the tort action has not proceeded to judgment. *American States Inc. Co. v. Bailey*, 133 F.3d 363,

4

368 (5th Cir. 1998). Enbridge has cited no authority for a different rule in the case of an excess insurer.

Enbridge does cite cases holding that an excess insurer has no duty to defend or indemnify until the primary policy limits are exhausted. *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 700-01 (Tex. 2000); *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660 (Tex. 2008). That proposition is not disputed. These cases are not particularly instructive on the issue of ripeness under federal law.[4]

RSUI relies in part on the recent Texas Supreme Court case *Excess Underwriters at LLoyds, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 54 (Tex. 2008), holding that if an excess insurer participates in a settlement, it may not later seek reimbursement from its insured if a court later determines that coverage does not exist under the excess insurance policy. As RSUI explains, the *Frank's Casing* case puts an excess insurer in a difficult dilemma: deny coverage and take your chances in a bad faith suit, or participate in settlement and waive your coverage defense. Recognizing this dilemma, the Texas Supreme Court encouraged insurers to seek prompt resolution of coverage disputes.

---

[4] Likewise, *Willbros RPI, Inc. v. Continental Cas. Co.*, Civil Action H-07-2479, slip op. (S.D. Tex. Aug. 27, 2008) (J. Hoyt), presented in Enbridge's supplemental motion (Dkt. 17), does not persuade the court that RSUI's action is premature. In *Willbros*, the court held that the excess insurer had a duty to defend that was not triggered until primary coverage was exhausted. Without discussion, the court dismissed the indemnity claim without prejudice as nonjusticiable. However, the issue of coverage under the excess policy was necessarily decided in connection with court's ruling on the duty to defend.

*Id.* at 46. The court is persuaded that this is precisely the type of dilemma the federal Declaratory Judgment Act is designed to resolve.

In the context of the federal Declaratory Judgment Act, a plaintiff can meet the "injury in fact" element of standing by establishing "actual present harm or a significant possibility of future harm." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542 (5th Cir. 2008). By its very nature, a declaratory judgment action focuses on an injury that has not yet occurred; the issue is whether injury is sufficiently likely to justify judicial intervention *Orix Credit*, 212 F.3d at 898. As a factual matter, Enbridge does not dispute RSUI's assertion that given the nature of the plaintiff's injuries in the underlying lawsuit, there is a significant possibility that defendants' liability will exceed Liberty policy limits.[5] And Enbridge does not deny that if that happens, it will make a claim under RSUI's policy. The parties' own conduct reflects an understanding that this coverage dispute is neither speculative nor theoretical. In a series of phone calls and emails before this suit was filed, Enbridge and Troy actively sought out RSUI's position on the "wrap up" exclusion.[6] The fact that a different and unrelated condition of coverage, *i.e.*, exceeding the primary policy limits, has

---

[5] RSUI's response (Dkt. 9), at 8.

[6] RSUI's response (Dkt. 9), exhibits A and B. Enbridge objects that RSUI's exhibits A and B, e-mail correspondence between Troy Construction and RSUI regarding RSUI's coverage position, are hearsay. The e-mails, which were written by representatives of parties in this case, are not hearsay because they are not submitted for the truth of the matters asserted therein, but only as proof that Troy has asked RSUI to state a coverage position. Enbridge's objection is overruled.

yet to be determined makes this coverage dispute no less real. Accordingly, the court concludes that this case presents a live controversy that is ripe for adjudication.

***Discretionary factors.*** Having determined that a justiciable controversy exists, the court looks to the *Trejo* factors to determine whether this federal court should nonetheless decline to exercise its jurisdiction. Enbridge makes only a conclusory argument on this score.[7] Indeed, it seems plain that the *Trejo* factors weigh in favor of allowing RSUI's case to proceed. The coverage issue presented here — the applicability of the "wrap up exclusion" — is not before the state court.[8] Enbridge presents no evidence: (1) that this case was filed in anticipation of other litigation; (2) that RSUI is guilty of forum shopping;(3) that inequities would flow from allowing the suit to go forward; (4) that this forum is inconvenient to any party; (5) that continuation of this suit would not serve judicial economy; or (6) that the federal court would be asked to construe a state judicial decree. This case will not interfere with or duplicate in any way the state court proceeding. The court concludes the *Trejo* factors weigh in favor of allowing this declaratory judgment case to proceed in federal court.

---

[7]   Enbridge's motion (Dkt. 8), at 8-9.

[8]   Texas law expressly prohibits joining an insurer in a liability suit. TEX. R. CIV. P. 38(c), 51(b).

### III.  Conclusion and Order

RSUI has met its burden to show jurisdiction under the federal Declaratory Judgment Act and there is not good cause for declining jurisdiction over this matter. Therefore, Enbridge's motion to dismiss and alternative motion to stay (Dkt. 8, 17) is denied.

Signed at Houston, Texas on December 9, 2008.

Stephen Wm Smith
United States Magistrate Judge